UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**OMAR SHABAZZ and DONALD WALLACE aka DONALD PERRINGTON,**

                                        Plaintiff,

                -against-

**KIERAN KAILER, TAX I.D. # 932839, AND THE CITY OF NEW YORK, ET AL.,**

                                        Defendants.

---

15-CV-2798 (JGK)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
THE DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

EATON & VAN WINKLE LLP
3 Park Avenue, 16th Floor
New York, NY 10016

On the Brief:

        Robert Rickner, Esq.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................... 1

THE FACTS ALLEGED ............................................................................................... 1

ARGUMENT ................................................................................................................. 3

    I.    THE APPLICABLE STANDARD. ..................................................................... 3

    II.    PLAINTIFFS' MALICIOUS PROSECUTION CLAIM IS WELL PLED. ............... 4

        a.    The automobile presumption alone is not enough to establish probable cause. .............. 5

        b.    Plaintiffs can rebut the grand jury presumption without Officer Kailer's testimony. ...... 8

    III.    THE § 1983 DUE PROCESS CLAIMS ARE TIMELY. ................................... 9

    IV.    THE § 1983 DUE PROCESS CLAIMS ARE WELL PLED. .......................... 11

        a. Officer Kailer is liable for the natural consequences of his actions................................... 13

        b. Officer Kailer cannot escape liability by arguing there was probable cause to
           indict Plaintiffs........................................................................................................ 15

           1. Officer Kailer conflates Plaintiffs' rights under the Fourth Amendment
              with Plaintiffs' rights under the Due Process Clauses. ................................... 16

           2. Even if there was probable cause for the indictment, Officer Kailer's lies
              could still deprive Plaintiffs of their liberty. ................................................... 20

        c. Officer Kailer cannot escape liability by blaming the Plaintiffs for being
           unable to defend themselves at trial........................................................................ 21

        d. Officer Kailer is liable for lying to the prosecutor, so he cannot immunize
           himself by telling the same lies to the grand jury, and the petit jury. ................................ 22

        e. Officer Kailer's lies were likely to influence the jury......................................... 24

    V.    OFFICER KAILER IS NOT ENTITLED TO QUALIFIED IMMUNITY. .............. 24

CONCLUSION............................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Amaker v. Weiner*, 179 F.3d 48 (2d Cir. 1999)..................................................................9

*Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162 (2d Cir. 2012)..............................4

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ...........................................3

*Bailey v. City of New York*, 79 F. Supp. 3d 424 (E.D.N.Y. 2015)..................................9, 10, 15, 17

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................3, 4

*Bermudez v. City of New York*, 790 F.3d 368 (2d Cir. 2015) .............................................14, 18, 20

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,

    403 U.S. 388 (1971)..........................................................................13

*Brandon v. City of New York*, 705 F. Supp. 2d 261 (S.D.N.Y. 2010) .............................................11

*Brody v. Vill. of Port Chester*, 345 F.3d 103 (2d Cir. 2003)..........................................14

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ..........................................................14

*Carey v. Piphus*, 435 U.S. 247 (1978) ...............................................................14

*Channer v. Mitchell*, 43 F.3d 786 (2d Cir. 1994) ......................................................9

*Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015) ................................................8, 22

*Collins v. City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. 2013) .............................................15

*Cty. Court of Ulster Cty., N. Y. v. Allen*, 442 U.S. 140 (1979) ..............................................6, 7, 25

*Davis v. Velez*, 797 F.3d 192 (2d Cir. 2015)..........................................................16

*Garnett v. Undercover Officer C0039*,

    No. 13-CV-7083, 2015 WL 1539044 (S.D.N.Y. Apr. 6, 2015) ...........................................19, 23

*Gerstein v. Pugh*, 420 U.S. 103 (1975)...............................................................17

*Heck v. Humphrey*, 512 U.S. 477 (1994) ...............................................................9

*Henry v. United States*, 361 U.S. 98 (1959)..................................................................17

*Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007)..................................................13, 22

*Hoyos v. City of New York*, 999 F. Supp. 2d 375 (E.D.N.Y. 2013)..............................19

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) ...........................................17

*Jocks v. Tavernier*, 316 F.3d 128 (2d Cir. 2003) ..............................................13, 16, 24

*Jovanovic v. City of New York*, 486 F. App'x 149 (2d Cir. 2012) ...........................19, 23

*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) ...........................................13

*Lewis v. City of New York*,

    No. 12-CV-2836, 2013 WL 6816615 (E.D.N.Y. Dec. 24, 2013) ..............................20

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010)..............................passim

*Matthews v. City of New York*, 889 F. Supp. 2d 418 (E.D.N.Y. 2012).............................6

*Michaels v. McGrath*, 531 U.S. 1118 (2001).................................................................23

*Mitchell v. Home*, 377 F. Supp. 2d 361 (S.D.N.Y. 2005)................................................10

*Morse v. Fusto*, 804 F.3d 538 (2d Cir. 2015) ..........................................................19, 20

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) ............................................................16

*Orakwue v. City of New York*,

    No. 11-CV-6183, 2013 WL 5407211 (E.D.N.Y. Sept. 25, 2013) ...........................11

*People v. Lemmons*, 40 N.Y.2d 505 (N.Y. 1976) .........................................................20

*People v. Williams*, 136 A.D.2d 132 (N.Y. 2d Dept 1988) ...........................................21

*Posr v. Court Officer Shield No. 207*, 180 F.3d 409 (2d Cir. 1999)...........................6, 8

*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) ...................................13, 14

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997)...........................13, 15, 16

*Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009).........................................4

*Struthers v. City of New York*,

    No. 12-CV-242, 2013 WL 2390721 (E.D.N.Y. May 31, 2013) ...................................................20

*United States v. Allen*, 127 F.3d 260 (2d Cir. 1997) ........................................................7

*United States v. Curcio*, 712 F.2d 1532 (2d Cir. 1983) ...................................................6

*Veal v. Geraci*, 23 F.3d 722 (2d Cir. 1994) .........................................................9, 10

*Warner v. Orange County Department of Probation*, 115 F.3d 1068 (2d Cir.1997) ....................13

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) ......................................................passim

**STATUTES**

18 U.S.C. § 892(b) ...........................................................................................7

42 U.S.C. § 1983 .......................................................................................passim

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 3

New York Penal Law § 265.03............................................................................5, 7, 21

New York Penal Law § 265.15...............................................................................5, 21

Plaintiffs Omar Shabazz and Donald Wallace submit this memorandum of law in opposition to the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Officer Kieran Kailer and the City of New York.

## PRELIMINARY STATEMENT

Officer Kailer found a gun in a woman's purse during an illegal search following a traffic stop. The gun obviously belonged only to the woman. It was latched in her purse, and she tried to take it out of the car with her. But Officer Kailer was not satisfied charging just one person, so he lied and said that the gun was in the middle of the backseat of the car, sticking out of the purse, within reach of everyone. This way he could claim all the passengers possessed the gun, under New York's automobile presumption. And it worked. He gave this story to the district attorney, who prosecuted the Plaintiffs from the grand jury through to their wrongful convictions. By lying to the prosecutor, Officer Kailer violated Plaintiffs' constitutional rights. Those violations are now the basis of Plaintiffs' malicious prosecution claims and due process claims under 42 U.S.C. § 1983. In his motion to dismiss, Officer Kailer consistently relies on non-binding and overruled authority, and ignores Second Circuit and Supreme Court precedent. For all the reasons detailed below, this fails, and his motion should be denied.

## THE FACTS ALLEGED

On January 9, 2008, just before midnight, Plaintiff Omar Shabazz was in a car, in the back seat behind the driver. C¶18.[1] Michael Arroyo was driving, Plaintiff Donald Wallace was in the front passenger seat, and Karla Cornielle was in the backseat behind Wallace. *Id.* Cornielle had a black purse with her, approximately 12 inches long and 8 inches high. C¶19. The purse was latched closed. *Id.*

---

[1] The Complaint is referenced as "C¶_." The Defendants' Memorandum of Law in Support of Their Motion to Dismiss Pursuant to Rule 12(b)(6) is referenced as "MTD _."

Cornielle was hungry, so Arroyo stopped the car and let her out to go buy some Chinese food. C¶21. While Cornielle was buying Chinese food, Arroyo circled the car several times. C¶22. Officer Kailer, and his partner Sergeant Gerry Albin, were in an unmarked police car and started to follow Arroyo, Wallace, and Shabazz. C¶23. When Cornielle exited the restaurant with her food in a bag, Arroyo drove up to her and she got back into the passenger seat behind Wallace. C¶24. Officer Kailer and Sergeant Albin saw Cornielle enter the car with her purse and her food. C¶25.

Arroyo drove north and then stopped for a red light at the next corner. C¶26. When the light turned green, Officer Kailer and Sergeant Albin pulled them over. *Id*. The two officers started to pull everyone out of the car. C¶¶28-29. Cornielle started to step out with her Chinese food and her closed purse, but Sergeant Albin told her to "put that shit back down." C¶30. Cornielle placed her closed purse right where she had been sitting. *Id*. Officer Kailer was belligerent, and shouted, "I know you all have something." C¶33.

Almost immediately after Cornielle had placed her purse back on her seat, Officer Kailer started searching the car. C¶34. He grabbed Cornielle's purse, and apparently felt that there was a gun inside. C¶35. He unlatched the purse, opened it, and then proclaimed: "I found lunch." *Id*. Shabazz and Wallace did not know Cornielle was carrying the gun until Officer Kailer found it in her purse. C¶40.

When Officer Kailer met with the prosecutor a few hours later, on January 10, 2008, he told a completely different story. C¶63. He claimed that he saw the purse sitting vertically in the middle of the back seat of the car, leaning against the backseat. C¶56. The purse was not latched, and the butt of the gun was sticking out of the top of the purse. C¶¶56-57.

2

Officer Kailer supported his story by posing a bottle of Champaign and a mostly-empty bottle of Hennessey in the middle of the backseat, and taking some Polaroids. C¶49. He gave these photographs to the prosecutor and claimed that he found the purse sitting between the two bottles. C¶¶49, 51. Officer Kailer also drafted and signed a felony complaint that claimed Shabazz and Wallace had committed the offsense "265.03(3) Criminal Possession of a Weapon in the Second Degree." C¶54.

The prosecution believed Officer Kailer – using the story he manufactured, and the Polaroids, to both indict Plaintiffs, and convict them at trial. C¶¶64-71, 76-96. Officer Kailer testified before the grand jury and the petit jury, repeating the lies he told the prosecutor in the beginning. *Id*. After two appeals, on October 13, 2013, the New York Court of Appeals ordered a new trial. C¶93. And on June 30, 2014, the prosecutor decided to abandon he charges. C¶96.

There was never any evidence that connected Shabazz and Wallace to Cornielle's gun. C¶89. They were only convicted because Officer Kailer lied about where he found the gun.[2]

## ARGUMENT

### I.      The applicable standard.

A Rule 12(b)(6) motion may not be granted if the complaint includes "enough facts to state a claim to relief that is plausible on its face," that is, enough factual allegations, taken as true, "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). "[I]n determining whether a complaint states a claim that is plausible, the court is required to

---

[2] Throughout his brief, Officer Kailer makes disparaging comments, implying that Plaintiffs allegations are not true: "sleight-of-hand allegations," "plaintiffs' embellish their allegations," "allegedly fabricated evidence." MTD 4,15. If there is any doubt that Officer Kailer lied to make sure Plaintiffs would be indicted and convicted, that doubt is resolved by the allegations in paragraphs 15 through 17 of the Complaint, which are filed under seal. *See* Dkt. No. 21.

proceed 'on the assumption that all the [factual] allegations in the complaint are true,'" even when their truth seems doubtful. *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). A the Court must "construe [P]laintiffs' complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiffs' favor." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (citation omitted).In fact, "[g]iven that the plausibility requirement 'does not impose a probability requirement at the pleading stage,' … 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely.'" *Anderson News*, 680 F.3d at 185 (quoting *Twombly*, 550 U.S. at 556).

## II.    Plaintiffs' malicious prosecution claim is well pled.

The elements of a malicious prosecution claim under § 1983 and state law are the same: (1) initiation or continuation of a criminal proceeding; (2) favorable termination of that proceeding; (3) lack of probable cause; and (4) malice. *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010).[3] Officer Kailer only challenges one of the four elements: probable cause.  Probable cause is a complete defense to a malicious prosecution claim, and a grand jury indictment creates a presumption of probable cause. *Id.*

Officer Kailer makes two arguments, both claiming there was probable cause to prosecute the Plaintiffs. Both Fail:

*First*, Officer Kailer claims that the automobile presumption alone, without any other facts implicating Plaintiffs, is enough to establish probable cause. MTD 7-8. But convicting

---

[3] The City of New York is liable for the state law malicious prosecution claim under the doctrine of *respondeat superior*. If the malicious prosecution claim is well-pled, which it is, the claims against the City of New York should not be dismissed.

Plaintiffs solely on the basis of the automobile presumption would, in itself, be unconstitutional. Officer Kailer cannot claim the prosecution was initiated with probable cause based on a theory that would violate Plaintiffs' rights.

*And second*, Officer Kailer argues that Plaintiffs cannot rebut the grand jury presumption using Officer Kailer's own testimony because he enjoys absolute immunity for anything he said to the grand jury. MTD 6-7. But this misstates Plaintiffs' claim. Plaintiffs can rebut the grand jury presumption without ever referring to his testimony.

### a. The automobile presumption alone is not enough to establish probable cause.

Officer Kailer argues, based on the automobile presumption in New York Penal Law § 265.15 that: "there is no dispute that the gun was found in a vehicle that was occupied by plaintiffs – that fact alone is sufficient to create probable cause to prosecution." MTD 7. This is wrong. A careful review of a key Supreme Court decision, and a Second Circuit case that follows, demonstrates why the automobile presumption, without any other facts to implicate Plaintiffs, is not enough to give an Officer Kailer probable cause to initiate a prosecution.

Under § 265.15(3), if there is a gun in an automobile, that fact alone is "presumptive evidence" that the gun is in the possession of all the passengers. And under § 265.15(4), possession of a weapon is "presumptive evidence" of the intent to use that weapon "unlawfully against another." Together, these two presumptions establish all the elements of criminal possession of a weapon in the second degree under New York Penal Law § 265.03, a felony. In short, under New York law," being a passenger in a car with a gun is deemed presumption evidence that (1) you possess the gun, (2) you intend to hurt someone with the gun, and (3) you have committed a felony.

In *Allen v. Cty. Court, Ulster Cty.*, the Second Circuit ruled that the automobile presumption under § 265.15 was "unconstitutional on its face." 568 F.2d 998, 1007 (2d Cir.

1977). On appeal, the Supreme Court reversed, finding that the statute is not *per se* unconstitutional, but that it may be unconstitutional as it is applied in a specific case. *Cty. Court of Ulster Cty., N. Y. v. Allen*, 442 U.S. 140, 157-58 (1979). In their decision, the Supreme Court found that the automobile presumption could be applied two different ways, and needed to be judged based on two different standards.

First, the presumption could be applied as it was in the *Allen* criminal trial. There, the automobile presumption was not the sole evidence against the respondents, it "was merely a part of the prosecution's case." *Id*. at 161. So, the Court found, when the automobile presumption is presented along with other evidence implicating the criminal defendant, it is constitutional as applied as long as there is a "rational connection" between the other facts implicating the criminal defendant and "the ultimate fact" that is established by the presumption. *Id*. at 165.[4]

But, the Supreme Court explained, there was another way to apply the automobile presumption: using the presumption alone as the "sole and sufficient basis for a finding of guilt." *Id*. at 167. When the presumption is the only evidence against a criminal defendant, the rational basis test does not apply.  *Id*. Instead, the prosecution "may not rest its case entirely on a presumption unless the fact proved [by the presumption] is sufficient to support the inference of guilt beyond a reasonable doubt." *Id*.; *United States v. Curcio*, 712 F.2d 1532, 1541 (2d Cir. 1983) ("as long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need meet only a more likely than not rather than a beyond a reasonable doubt standard") (quotation omitted).

---

[4] In *Matthews v. City of New York*, the court only considered whether the automobile presumption provided probable cause to arrest the plaintiffs. 889 F. Supp. 2d 418, 430 (E.D.N.Y. 2012). Probable cause to arrest is a lower standard than probable cause to prosecute, so *Matthews* is not inconsistent with Plaintiffs' argument here. *See Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999) (explaining the two probable cause standards).

In another case where, by pure coincidence, the criminal defendant was also named Allen, the Second Circuit applied this rule. *United States v. Allen*, 127 F.3d 260, 270 (2d Cir. 1997) (hereinafter "*Allen 2*"). Allen was convicted of extortionate extension of credit, which requires proof that the loan could be enforced through violence. Under 18 U.S.C. § 892(b), the government can meet every element of this charge, including the threat of violence, by establishing several non-violent facts. The government managed to prove all the facts it needed to invoke the presumption under § 892(b), but there was no proof Allen ever threatened the victim. *Allen 2*, 127 F.3d at 267-68. On appeal, the government argued that the presumption alone was enough to uphold the conviction. *Id*. at 268-69. The Second Circuit disagreed, finding that the presumption under § 892(b) alone was not enough to prove the case beyond a reasonable doubt. *Id*. at 270 *citing Allen*, 442 U.S. at 167.

Here, Officer Kailer relies solely on the automobile presumption, so the presumption must be evaluated under the beyond a reasonable doubt standard, and not the rational connection standard. To convict Plaintiffs of weapons possession in the second degree, the prosecution would need to prove both that Plaintiffs possessed the gun, and that Plaintiffs intended to use the gun to harm someone. N.Y. Penal Law § 265.03. Therefore, it is unconstitutional to convict Plaintiffs solely based on the automobile presumption, unless a reasonable jury could find that the mere fact of being in a car with a gun is enough to prove, beyond a reasonable doubt, that Plaintiffs possessed the gun and intended to use it. This fails. While the automobile presumption might, combined with other facts, be enough to satisfy the rational connection test, it cannot survive the higher standard on its own. Consequently, it would be unconstitutional to convict Plaintiffs of second degree weapons possession solely based on the automobile presumption.

In a malicious prosecution action under § 1983, there is no probable cause to charge a criminal defendant unless the police officer believes that the defendant could "be successfully prosecuted." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999) (explaining the difference between probable cause for an arrest, and probable cause for a prosecution). It would have been unconstitutional to convict Plaintiffs solely based on the automobile presumption, so it is axiomatic to conclude that there was no reason to believe that such a prosecution would have been successful. Therefore, Officer Kailer cannot claim there was probable cause to prosecute Plaintiffs based solely on the automobile presumption.

**b. Plaintiffs can rebut the grand jury presumption without Officer Kailer's testimony.**

Officer Kailer argues that Plaintiffs' cannot rebut the grand jury presumption by using his own testimony to prove he lied to secure the indictment. MTD 6-7 (citing *Coggins v. Buonora*, 776 F.3d 108, 112 (2d Cir. 2015). This argument both misstates Plaintiffs' malicious prosecution claim, and misstates the ruling in *Coggins*.

In *Coggins*, the Second Circuit ruled that a malicious prosecution claim can go forward when a police officer's conduct "laid the groundwork" for the grand jury indictment, even if the police officer repeats the same testimony to the grand jury in order to secure the indictment. 776 at 113-14. And that is what Plaintiffs allege here. Officer Kailer is liable for initiating a criminal action against the Plaintiffs without probable cause. Officer Kailer signed a felony complaint and forwarded it to the prosecution. He also lied to the prosecution, manufacturing the entire case against the Plaintiffs. All this occurred before Officer Kailer ever went to the grand jury, and taken together it is enough to rebut the grand jury presumption by showing that the indictment was procured through "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010).

**III.     The § 1983 due process claims are timely.**

Plaintiffs' § 1983 due process claims are not time-barred. Officer Kailer's arguments to the contrary are based on the Second Circuit's ruling in *Veal v. Geraci*, 23 F.3d 722 (2d Cir. May 5, 1994) which was overruled by the Supreme Court a few months later in *Heck v. Humphrey*, 512 U.S. 477 (June 24, 1994). MTD 10-11. Officer Kailer never cites or distinguishes this binding precedent, so his argument fails.

The three year statute of limitations for Plaintiffs' § 1983 due process claim has not passed because this claim did not accrue until the prosecutor decided to dismiss the charges on June 30, 2014. In *Heck*, the Supreme Court held that § 1983 claims "are not appropriate vehicles for challenging the validity of outstanding criminal judgments." 512 U.S. 477, 485-86 (1994). Allowing civil and criminal cases to be litigated simultaneously would, the Court reasoned, risk "conflicting resolutions arising out of the same or identical transactions." *Id*. Consequently, a § 1983 claim challenging a conviction is not cognizable – does not even exist – until that underlying conviction is invalidated. *Id*. at 486-89; *Bailey v. City of New York*, 79 F. Supp. 3d 424, 445, 454-55 (E.D.N.Y. 2015). So if a plaintiff brings a § 1983 action claiming they were wrongfully convicted – before their conviction is overturned – the case must be dismissed. *See Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (dismissing § 1983 claim based on numerous due process violations because the underlying conviction had never been overturned or dismissed); *Channer v. Mitchell*, 43 F.3d 786, 787 (2d Cir. 1994) (same for § 1983 claim based on allegations police coerced witnesses).

The corollary to this rule is that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489-90. So the statute of limitations on a § 1983 due process

claim does not begin running, until the underlying conviction has resolved in the plaintiff's favor. *Bailey v. City of New York*, 79 F. Supp. 3d at 445, 454-55.

In this case, Plaintiffs' certainly claim that their underlying convictions were invalid and unconstitutional. Plaintiffs were deprived of their liberty because Officer Kailer violated their rights under the Due Process Clauses, as detailed in section IV. below. If Plaintiffs had tried to bring their § 1983 due process claims while they were still in prison, they would have been dismissed under *Heck*. As a result, their claims did not accrue until the charges against them were dropped in 2014, and this case started well within the three-year statute of limitations.

Officer Kailer's arguments to the contrary are based on *Veal*, which has been overruled. The Second Circuit's ruling in *Veal v. Geraci*, 23 F.3d 722 (2d Cir. May 5, 1994) was decided two months before the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (June 24, 1994) and because *Veal's* ruling regarding accrual contradicts *Heck's* ruling, *Veal* was implicitly overruled. In *Veal*, the plaintiff was convicted based on an identification caused by an unconstitutionally suggestive lineup. *Veal*, 23 F.3d at 723-24. The appellate court overturned his conviction, but in the subsequent civil suit the court found that his § 1983 action challenging this lineup accrued when he first learned about the lineup's defects, years before the conviction was overturned. *Id*. at 724-25. The plaintiff in *Veal's* § 1983 cause of action specifically challenged the trial and evidence that caused his conviction. Therefore, under *Heck*, the claim in *Veal* would not have accrued until the conviction was reversed. *Heck*, 512 U.S. at 486-89. There is no way to reconcile the two cases: *Heck* overrules *Veal*, so the accrual date here must be analyzed under the *Heck* accrual rule.[5]

_____

[5] *Mitchell v. Home* relies entirely on *Veal* in its accrual analysis, as well as other cases decided before *Heck*. 377 F. Supp. 2d 361, 373-74 (S.D.N.Y. 2005). Similarly, *Brandon v. City of New York*, relies on *Veal* in a footnote, and never discusses *Heck*. 705 F. Supp. 2d 261, 278 (S.D.N.Y.

## IV.    The § 1983 due process claims are well pled.

Officer Kailer fabricated the entire case against Plaintiffs. It was Corneille's gun, in her purse, on her person. But that was not enough for Officer Kailer. He wanted to implicate everyone in the car. So he made up a story about where he found the gun – claiming it was in plain sight, sticking out of a bag in the backseat, within easy reach of everyone else in the car. And then he took Polaroids of the backseat where he claimed he found the gun, adding a few liquor bottles to make sure Plaintiffs looked dangerous.

Of course, Officer Kailer did not keep this story to himself. He forwarded the story, and the Polaroids, to an unwitting prosecutor. As a result, Officer Kailer is liable for the natural consequences of his actions: The prosecutor took his lies to the grand jury, then to the petit jury, Plaintiffs were wrongfully convicted, deprived of their liberty – all because Officer Kailer violated their rights under the Due Process Clauses of the Fifth and Fourteenth Amendments by fabricating evidence.

Now, Officer Kailer wants to shirk liability for the tragic events he set in motion by arguing that the chain of causation was somehow broken between the time he lied to the prosecutor, and the time the prosecutor unwittingly used those lies to prosecute and convict Plaintiffs. All of his arguments are based on unpublished decisions, *dicta*, and other non-binding precedent. Again, Officer Kailer ignores recent, binding precedent from the Second Circuit – precedents that undermine and refute every one of his arguments – without trying to distinguish them, or even citing them. This fails:

---

2010). *Orakwue v. City of New York*, cites *Mitchell* in a footnote, with no analysis and without discussing *Heck*. No. 11-CV-6183, 2013 WL 5407211, at *7 (E.D.N.Y. Sept. 25, 2013). These cases do not follow the accrual analysis in *Heck*, so they have little persuasive or precedential value.

*First*, the Second Circuit has long held that when a police officer violates someone's constitutional rights, he is liable for the natural consequences of his actions. When Officer Kailer lied to the prosecutor, he corrupted the entire prosecution that followed, so he is liable for the inevitable result – Plaintiffs were deprived of their liberty.

*Second*, Officer Kailer argues that the chain of causation was broken because there was probable cause to indict Plaintiffs. MTD 12-13. But this argument has been explicitly rejected by the Second Circuit at least twice last year, and many times before that. Probable cause (and thus a grand jury indictment) is no defense when an officer fabricates evidence.

*Third*, Officer Kailer argues that the chain of causation was broken because Plaintiffs could not defend themselves at trial by calling rebuttal witnesses. MTD 13-15. This argument is offensive. Officer Kailer cannot violate Plaintiffs' rights and then escape liability by blaming the victim.

*Fourth*, Officer Kailer argues that he is not liable for forwarding false evidence to the prosecutor because the false evidence was ultimately delivered to the jury through his own testimony. MTD 15-17. There is an absolute privilege for testifying, so, he argues, he cannot be liable for anything he did beforehand. This argument has also been rejected by the Second Circuit, as recently as last year. Police officers are liable for their misconduct before they testify to the grand jury. They cannot immunize themselves later by testifying to the same lies they told a prosecutor earlier.

*And finally*, Officer Kailer argues that he is not liable because the evidence he fabricated was not material. MTD 13-15. This fails on the facts alone. He created the entire case against Plaintiffs – there was little else presented to the jury. The Plaintiffs were convicted, so the fabrications must have influenced the jury.

### a. Officer Kailer is liable for the natural consequences of his actions.

The Second Circuit has long held that: "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) *quoting Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *see also Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000) (finding that there is a right "not to be deprived of liberty as a result of the fabrication of evidence by a government officer").

As with all § 1983 claims, causation is governed by ordinary tort principles, so "those sued under § 1983, are responsible for the natural consequences of their actions." *Kerman v. City of New York*, 374 F.3d 93, 126 (2d Cir. 2004) (reversing the lower court for failing to instruct the jury that the defendants could be liable for any loss of liberty) *citing Warner v. Orange County Department of Probation*, 115 F.3d 1068, 1071 (2d Cir.1997); *Zahrey*, 221 F.3d at 357 (2d Cir. 2000) (finding that the "natural consequences" causation standard applies in § 1983 and *Bivens* actions); *see also Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007) (reversing because a *Bivens* defendant is liable for the natural consequences of his actions, which the lower court failed to consider).[6]

Moreover, causation is fact intensive question for the jury – not grounds for dismissal on the pleadings, or even at summary judgment. *See Higazy*, 505 F.3d at 175 (2d Cir. 2007); *but see Kerman*, 374 F.3d at 127 (finding causation existed as a matter of law because it was obvious

---

[6] The standard for claims under § 1983 and claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 405 (1971) are largely the same, and the Second Circuit regularly cites *Bivens* cases in § 1983 actions, and § 1983 cases in *Bivens* actions. *See, e.g., Poventud v. City of New York*, 750 F.3d 121, 150 (2d Cir. 2014) (citing *Bivens* cases in a § 1983 action); *Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007) (citing § 1983 cases in *Bivens* action).

that defendants' acts caused plaintiff's deprivation of liberty – no rational factfinder could disagree).[7]

When Officer Kailer argues that he did not cause the Plaintiffs' to be deprived of their liberty – each was imprisoned for 5 years – he ignores the crucial differences between the police and the prosecution. Police officers gather evidence during their investigation and then forward it to prosecutors. Police officers do not decide who is prosecuted, what evidence gets presented to a grand jury, or what evidence is introduced at trial. All those decisions are made by the prosecutor who must exercise "independent judgment [during] every phase of his work." *Buckley v. Fitzsimmons*, 509 U.S. 259, 285 (1993). So when a police officer lies to a prosecutor, he hijacks the prosecutor's independent judgment by encouraging the prosecutor to make decisions based on fabrications, rather that the true facts. *See, e.g., Bermudez v. City of New York*, 790 F.3d 368, 376 (2d Cir. 2015) (finding that if the prosecutor was misled by the police, it prevented him "from making an informed decision about the reliability of that evidence"); *Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000) ("it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.") (quotation omitted).

---

[7] A § 1983 due process claim can even go forward without an actually injury. As the Second Circuit explained in *Poventud v. City of New York*: "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury." 750 F.3d 121, 136 (2d Cir. 2014) *quoting Carey v. Piphus*, 435 U.S. 247, 266 (1978) (internal citations omitted); *see also Brody v. Vill. of Port Chester*, 345 F.3d 103, 121 (2d Cir. 2003) (finding that a § 1983 due process claim can go forward, even if plaintiff cannot connect his deprivation of liberty to the constitutional violation alleged).

For example, if the prosecutor here had known the truth, she never would have called Officer Kailer as a witness. *Collins v. City of New York*, 923 F. Supp. 2d 462, 472 (E.D.N.Y. 2013) ("No reasonable prosecutor could think it acceptable to submit false evidence or suborn perjury"). And this is why Officer Kailer is liable. Providing false evidence to a prosecutor is not a discrete action that can be carefully separated from its ultimate consequences – because this unconscionable act "works an unacceptable corruption of the truth-seeking function of the trial process." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

Officer Kailer set the criminal prosecution against Plaintiffs into motion when he manufactured the entire case against Plaintiffs and handed it to the prosecutor at the very beginning. So he is liable for the inevitable result: The prosecutor took this manufactured case, not knowing it was fabricated, and prosecuted Plaintiffs from the grand jury through to their wrongful convictions.[8]

**b. Officer Kailer cannot escape liability by arguing there was probable cause to indict Plaintiffs.**

The Second Circuit has held, for almost 20 years, that a police officer cannot fabricate evidence and then avoid liability by arguing there was probable cause: "This argument—an ill-conceived attempt to erect a legal barricade to shield police officials from liability—is built on the most fragile of foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123,

---

[8] This § 1983 due process claim may appear similar to a malicious prosecution claim because Plaintiffs argue that Officer Kailer set the prosecution in motion when he forwarded false evidence to the prosecution. These claims are, however, distinct. As discussed in section IV.b. below, malicious prosecution claims arise under the Fourth Amendment and § 1983 due process claims arise under the Fifth and Fourteenth Amendments. Both claims can be brought together, even if they are based on the same facts. *See Bailey v. City of New York*, 79 F. Supp. 3d 424, 446 (E.D.N.Y. 2015).

130 (2d Cir. 1997). Allowing police officers to fabricate evidence, and then hide behind probable cause "*would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice*" because false evidence "works an unacceptable corruption of the truth-seeking function of the trial process." *Id*. (quotations omitted); *see also Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (following *Ricciuti* and finding that probable cause is no defense when an office fabricates evidence); *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010) (same); *Davis v. Velez*, 797 F.3d 192, 212 (2d Cir. 2015) (same).

### 1. Officer Kailer conflates Plaintiffs' rights under the Fourth Amendment with Plaintiffs' rights under the Due Process Clauses.

In his motion, Officer Kailer tries to dodge the well-established rule that probable cause is no defense when an officer fabricates evidence by arguing that the grand jury indictment broke the chain of causation – in essence, arguing that Plaintiffs went to prison because they were indicted, not because Officer Kailer lied. As long as there was probable cause for the indictment in the beginning, he claims he is not responsible for any deprivation of liberty or conviction that happened afterwards. MTD 12-13.

On its face, this argument is fundamentally at odds with *Ricciuti*'s holding that officers are never free to falsify evidence simply because there was probable cause. 124 F.3d at 130. But the problem goes deeper. Officer Kailer fails to distinguish between § 1983 claims for malicious prosecution under the Fourth Amendment, and § 1983 due process claims under the Fifth and Fourteenth Amendments. Under the Fourth Amendment, probable cause is a complete defense; under the Due Process Clauses, probable cause is irrelevant.

Malicious prosecution claims are grounded in the Fourth Amendment right to be free from unreasonable searches and seizures. *See Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997).

An alleged criminal cannot be seized – whether in police custody, or in prison – based on mere suspicion. *See Henry v. United States*, 361 U.S. 98, 101 (1959). Instead, under the Fourth Amendment, there must be probable cause for any detention, whether it is an arrest by police or being held before trial. See *id*.; *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). Consequently, in any § 1983 claims under the Fourth Amendment, like false arrest and malicious prosecution, probable cause is a complete defense. *See Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010) (malicious prosecution); *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (false arrest). If there was probable cause for the seizure, the Fourth Amendment was satisfied, and there is no "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. 1983.

But probable cause is only the bare minimum needed to start a criminal prosecution. Everything the government does afterwards must satisfy the Due Process Clauses of the Fifth and Fourteenth Amendments. Under the Due Process Clauses, there is a separate right "not to be deprived of liberty as a result of the fabrication of evidence by a government officer." *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000).[9] So, when a police officer fabricates evidence, he has violated the accused's rights under the Due Process Clauses. And that violation is actionable in a § 1983 due process claim for damages. Probable cause is irrelevant; it cannot break the chain of causation. Instead, damages (and any deprivation of liberty) are determined by a jury following ordinary tort principles, as described in section IV.a. above.

---

[9] In *Zahrey v. Coffey*, the Second Circuit describes the plaintiff's claim as "the deprivation of his liberty without due process of law," which mirrors the Due Process Clauses. 221 F.3d 342, 348 (2d Cir. 2000). But other courts have found that when a police officer fabricates evidence, there is also a claim under the Sixth Amendment. *See Bailey v. City of New York*, 79 F. Supp. 3d 424, 444 (E.D.N.Y. 2015) (finding that the claim arises from both the Due Process Clauses and the Sixth Amendment). Here, Officer Kailer violated Plaintiffs' rights under the Due Process Clauses, which is enough to support his claim, so it is not necessary to determine whether he also violated their rights under the Sixth Amendment.

Two recent Second Circuit cases illustrate this fundamental difference between malicious prosecution claims, and § 1983 due process claims. First, in *Bermudez v. City of New York*, two officers coerced witnesses, and used unduly suggestive techniques at a line-up. 790 F.3d 375-77 (2d Cir. 2015). On appeal, the Second Circuit upheld dismissal of the malicious prosecution claim because there was probable cause, which is a complete defense. *Id*. at 376. But the Second Circuit allowed the § 1983 due process claim to go to the jury, reversing the lower court, because "a jury could find that Defendants remained a proximate cause of the deprivation of Bermudez's due process rights." *Id*. In *Bermudez*, the indictment did not break the chain of causation. It was not even relevant to the due process analysis. *Id*. at 375-76, 376 n3 ("absence of probable cause is not an element of a due process claim").

Similarly, in *Morse v. Spitzer* – cited favorably by Officer Kailer – the court made the same distinction between malicious prosecution claims under the Fourth Amendment, and claims under the Fifth and Fourteenth Amendments: "the Second Circuit established through *Ricciuti* and *Zahrey* that even where no Fourth Amendment violation occurred because there was probable cause to act (thereby rendering a malicious prosecution claim unavailable), an independent constitutional claim for the denial of the right to a fair trial can proceed under § 1983 based on allegations that a police officer fabricated evidence." No. 07-CV-4793, 2012 WL 3202963, at *5 (E.D.N.Y. Aug. 3, 2012). But the court went even further, ruling that "***the existence of probable cause is irrelevant to the resolution of this claim***." *Id*. Morse's malicious prosecution claim was dismissed because there was probable cause. *Id*. at *6. But his § 1983 due process claims went to trial, Morse won a large verdict, and the Second Circuit affirmed the ruling because: "[n]otwithstanding the legally permissible one-sided nature of grand jury proceedings, everyone possesses the additional and distinct right not to be deprived of liberty as

a result of the fabrication of evidence by a government officer." *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015) *quoting Zahrey*, 221 F.3d at 349.

Rather than discussing the actual ruling in the *Morse* case, Officer Kailer takes one section of *dicta* out of context. After examining the difference between due process claims, and malicious prosecution claims, the court notes that most § 1983 claims arise from allegations that an officer fabricated evidence "to provide probable cause." *Morse*, 2012 WL 3202963, at *6. In those cases, the fair trial claims and the malicious prosecution claims should be analyzed together. *Id*. This is true, because both claims are made under the Fourth Amendment, not the Fifth and Fourteenth Amendments.  After all, the *Morse* court had just ruled, a few sentences earlier, that probable cause is ***irrelevant*** to claims under the Fifth and Fourteenth Amendments. *Id*. at *5.

In fact, Officer Kailer only has one district court case to support his argument, *Hoyos v. City of New York*, 999 F. Supp. 2d 375 (E.D.N.Y. 2013). This case was probably wrong when it was decided, and has certainly been overruled by *Bermudez* and *Morse*. In *Hoyos*, the court found that the officer's fabricated testimony did not cause the plaintiff's deprivation of liberty because, even without the fabrications, there was probable cause for the prosecution and, the court assumed, he would have been in prison anyway while he waited for his trial (which he won). *Id*. at 384. The court never considered the Second Circuit's rulings on causation. Instead, the decision rests on a single, unpublished, non-binding ruling. *Id*. at 393 *citing Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012); *but see Garnett v. Undercover Officer C0039*, No. 13-CV-7083, 2015 WL 1539044, at *4 (S.D.N.Y. Apr. 6, 2015) (harshly criticizing both *Hoyos* and *Jovanovic*).

This ruling in *Hoyos* cannot be reconciled with either *Bermudez* or *Morse*. In *Bermudez*, the Second Circuit ruled that there was probable cause for the indictment, and yet they still found that causation in the § 1983 due process claims should be left to the jury. *Bermudez*, 790 F.3d at 375-77. And in *Morse*, the lower court found that there was probable cause (same as in *Hoyos*), the plaintiff was deprived of his liberty before trial (same as in *Hoyos*), and the plaintiff won his criminal trial, so there was no post-trial imprisonment (same as in *Hoyos*). *Compare Hoyos*, 999 F. Supp. 2d at 384 *with Morse*, 804 F.3d at 543-45. But in *Morse*, the Second Circuit upheld the verdict, rather than dismissing the complaint. *Morse*, 804 F.3d at 550.[10]

### 2.   Even if there was probable cause for the indictment, Officer Kailer's lies could still deprive Plaintiffs of their liberty.

Plaintiff's case is a perfect example of how a violation of the Due Process Clauses can deprive someone of their liberty, even if there are no claims under the Fourth Amendment. We will assume, for a moment, that Officer Kailer is right when he argues that the automobile presumption under N.Y. Penal Law § 265.15, without any other facts, is enough to establish probable cause. MTD 6-10. Probable cause, and a grand jury indictment, do not guarantee a conviction at trial. The automobile presumption is not mandatory. *People v. Lemmons*, 40 N.Y.2d 505, 510 (N.Y. 1976). A petit jury can reject it even when the criminal defendant fails to introduce any contrary proof. *Id*.

---

[10] The other two cases cited by Officer Kailer offer no support for his argument. In *Lewis v. City of New York*, the court distinguished due process claims and malicious prosecution claims, finding that probable cause was no defense to claims under the Fifth and Fourteenth Amendments, so it actually undermines Office Kailer's arguments. No. 12-CV-2836, 2013 WL 6816615, at *8 (E.D.N.Y. Dec. 24, 2013). And in *Struthers v. City of New York*, the case was dismissed because the plaintiff could not describe, in any detail, what fabricated evidence had been forwarded to prosecutors, so the court never needed to address the difference between due process claims and malicious prosecution claims. No. 12-CV-242, 2013 WL 2390721, at *13 (E.D.N.Y. May 31, 2013).

Here, the petit jury did not reject the presumption; they convicted the Plaintiffs.
Therefore, to determine causation, a jury in this civil rights case could be presented with two
possibilities: One, a jury might find that the Plaintiffs were convicted solely because the they
were in a car, with a gun, and a statute says that is enough to assume they committed a felony.
N.Y. Penal Law §§ 265.03, 265.15. Or two, a jury might find that Plaintiffs were convicted
because they believed the entire story that Officer Kailer fabricated and forwarded to the
prosecutor.[11]

At a minimum, causation in this case is a fact for the jury that cannot even be resolved at
summary judgment, let alone a motion to dismiss. Probable cause, and the grand jury indictment,
do not break the chain of causation and allow Officer Kailer to escape liability.

### c. Officer Kailer cannot escape liability by blaming the Plaintiffs for being unable to defend themselves at trial.

Officer Kailer argues that his actions did not cause Plaintiffs' to be deprived of their
liberty because it was either the trial court's fault or the Plaintiffs' own fault that they were
convicted. The Plaintiffs did not call Cornielle to testify because she lied to save herself at her
own trial and was unlikely to be a helpful witness. And the Plaintiffs could not call another
witness who heard Cornielle confess that the gun was hers because the trial court improperly
excluded the evidence. Plaintiffs could not effectively defend themselves at trial, so Officer
Kailer claims he cannot be liable for their wrongful convictions. MTD 13-15.

*This argument is offensive*, and Officer Kailer could not find a single case to support it.
It fails for at least two reasons. First, it inverts the well-understood meaning of causation. There

---

[11] This same argument applies equally for the grand jury because they are also free to reject the
automobile presumption, and may not have indicted Plaintiffs, had they known the truth. *See
People v. Williams*, 136 A.D.2d 132, 136 (N.Y. 2d Dept 1988) (finding that the grand jury must
be instructed that they are free to reject the automobile presumption).

21

is an unbroken chain of events from Officer Kailer's lies through to Plaintiffs' convictions. If Plaintiffs had successfully defended themselves at trial, that would have disrupted causation. So Officer Kailer has it backwards. He is liable for the damage he caused; Plaintiffs cannot be blamed because they could not stop him.

And second, this argument ignores the Second Circuit's ruling that the independent decisions of third parties do not break the chain of causation if the defendant "deceived the subsequent decision maker." *Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007). If Officer Kailer had admitted that he lied, confessing to everyone – the prosecutor, defense counsel, the judge, and the jury – and the jury still convicted the Plaintiffs, he might have a defense. But that never happened. So Officer Kailer is still liable for the natural consequences of his actions, including all the proceedings that he set in motion when he first lied to the prosecutor. *Id.* at 175-77 (explaining that a § 1983 defendant who coerced a confession can still be liable despite the later bad decisions of both the judge and the plaintiff's own attorney).

> **d. Officer Kailer is liable for lying to the prosecutor, so he cannot immunize himself by telling the same lies to the grand jury, and the petit jury.**

Officer Kailer claims that he is not liable for any lies he told the prosecutor because the false evidence was ultimately delivered to the jury through his own testimony. MTD 13-17. This fails because it misstates the basis of Plaintiffs' § 1983 due process claim. Plaintiffs' do not claim that Officer Kailer is liable because he lied to the grand jury or the petit jury. There is no doubt that lying to either jury is abhorrent and an independent violation of Plaintiffs' rights beyond what is alleged here. But Officer Kailer is immune. Officer Kailer is not immune, however, for what he did before he testified at the grand jury.

Two Second Circuit decisions illustrate the difference. Most recently, in *Coggins v. Buonora*, the court ruled that a plaintiff could sustain a § 1983 action based on the defendants'

"statements to the district attorney," even if the defendants' later grand jury testimony was largely the same. 776 F.3d 108, 113 (2d Cir. 2015). Ruling otherwise, "would set a dangerous precedent: Any police officer could immunize for § 1983 purposes any unlawful conduct prior to and independent of his perjurious grand jury appearance merely by testifying before a grand jury. "*Id*. at 112-13. Likewise, in *Zahrey v. Coffey*, the Second Circuit held that a prosecutor who fabricated evidence during his investigation could still be liable, even if the prosecutor was immune when he presented that same fabricated evidence to the grand jury and petit jury. 221 F.3d 342, 353-54 (2d Cir. 2000) *cited favorably in Michaels v. McGrath*, 531 U.S. 1118 (2001) (Justice Thomas arguing, unsuccessfully, that the Supreme Court should grant *certiori* because *Zahrey* "is very likely correct" in holding that an "intervention of a subsequent immunized act by the same officer does not break the chain of causation necessary for liability").

In his argument, Officer Kailer relies heavily on *Jovanovic v. City of New York*. 486 F. App'x 149, 152 (2d Cir. 2012). But this case does not go as far as Officer Kailer believes. It may appear that *Jovanovic* holds that a police officer cannot be liable for fabricating evidence if the evidence reaches the grand jury through the officer's own testimony. The actual ruling, however, is far less extreme. *Jovanovic* is a summary order, unpublished, and is not binding on this Court. *See Garnett v. Undercover Officer C0039*, No. 13-CV-7083, 2015 WL 1539044, at *4 (S.D.N.Y. Apr. 6, 2015) (explaining why *Jovanovic* is not precedent). Being a summary order, the decision has few facts, so it is necessary to review the lower court opinion. From that opinion, it is apparent that the only false statement plaintiff relies on for his § 1983 due process claim is one comment officer Milton Bonilla made to the grand jury: He testified that some candles were missing from the crime scene. *Jovanovic v. City of New York*, No. 04 CIV. 8437, 2010 WL 8500283, at *3 (S.D.N.Y. Sept. 28, 2010). There is no indication that this allegedly false

23

statement was ever forwarded to the prosecutors. And if Bonilla had, it is unclear the prosecutors would have even considered it, given the detailed kidnapping and sexual assault allegations from the victim. With these facts in mind, the Second Circuit's summary order is unremarkable. There was no connection between Bonilla's statement and the plaintiff's deprivation of liberty.[12]

In this case, Officer Kailer manufactured the entire case against Plaintiffs – both his own false statements and the Polaroids – and he gave it to the prosecutor, all on January 10, 2008, before he ever testified to the grand jury or the petit jury. C¶¶52-63. The harm he caused went much further than Bonilla's isolated statement to the grand jury. So Officer Kailer is not immune from liability here.

### e. Officer Kailer's lies were likely to influence the jury.

To state a § 1983 due process claim, the fabricated evidence must be "likely to influence a jury's decision." *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (quotations omitted). Officer Kailer argues that the Polaroids he took to support his story would not have influenced the jury, so they are not material and did not cause Plaintiff's to be deprived of their liberty. MTD 15. This fails for two reasons. First, the Polaroids were only one part of the case he manufactured. Taken together, the Polaroids and the lies Officer Kailer told the prosecutor (and repeated at trial) were almost all the evidence presented to the petit jury. This evidence must have influenced them. And second, the Polaroids did influence the jury because they asked to have them in the jury room during deliberations. C¶91.

### V.    Officer Kailer is not entitled to qualified immunity.

Qualified immunity is not available when a defendant is "in violation of clearly established law." *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010). To the

---

[12] Any lower court rulings that quote this ruling in *Jovanovic*, without considering these facts, should be disregarded.

extent Officer Kailer lied to prosecutors and falsified evidence, "it is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000). Qualified immunity is no defense when an officer fabricates evidence.

To the extent Officer Kailer initiated the prosecution with malice and without probable cause, "[f]reedom from malicious prosecution is a constitutional right that has long been clearly established." *Manganiello*, 612 F.3d at 164–65 (2d Cir.2010). And, more than thirty years ago, in a case interpreting the automobile presumption, the Supreme Court warned that a prosecution may not rest "entirely on a presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt." *Cty. Court of Ulster Cty., N. Y. v. Allen*, 442 U.S. 140, 167 (1979). So it was clear that Officer Kailer had no probable cause based solely on the automobile presumption.

## CONCLUSION

Plaintiffs spent five years in prison for a crime they did not commit. Given the detailed allegations in the Complaint, their claims should be allowed to go forward, and Officer Kailer's motion to dismiss should be denied.

Dated:   New York, New York
              January 29, 2016

EATON & VAN WINKLE LLP

By:_____
        Robert Rickner, Esq.
        3 Park Ave. 16th Floor
        New York, New York 10016
        (212) 561-3605
        *Attorneys for Plaintiff*

25