UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————

OMAR SHABAZZ, ET AL.,

                Plaintiffs,

      - against –

KIERAN KAILER, ET AL.,

              Defendants.
————————————————————————————————

15-CV-2798 (JGK)

OPINION & ORDER

JOHN G. KOELTL, District Judge:

    Omar Shabazz and Donald Wallace, a.k.a. Donald Perrington,
bring this action against defendants Kieran Kailer and the City
of New York for alleged violations of 42 U.S.C. § 1983 and for
malicious prosecution under New York law. Shabazz and Wallace
allege that Kailer, then a New York City Police Department
("NYPD") officer, violated their constitutional rights by
fabricating evidence that was presented in a trial at which the
plaintiffs were each convicted of criminal possession of a
weapon. The convictions were ultimately reversed by the New York
Court of Appeals, and the State subsequently abandoned the
charges. This Court has jurisdiction under 28 U.S.C. § 1331 and
28 U.S.C. § 1367(a). The defendants now move to dismiss the
Amended Complaint in its entirety for failure to state a claim
under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.; see also A'Gard v. Perez, 919 F. Supp. 2d 394, 398-99 (S.D.N.Y. 2013).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in

2

bringing suit and that are either in the plaintiff's possession
or that the plaintiff knew of when bringing suit, or matters of
which judicial notice may be taken. See Taylor v. Vt. Dep't of
Educ., 313 F.3d 768, 776 (2d Cir. 2002); see also A'Gard, 919 F.
Supp. 2d at 399.

**II.**

The following facts alleged in the Amended Complaint are
accepted as true for the purposes of the defendants' motion to
dismiss.

Around midnight on January 9, 2008, the plaintiffs were in
a car with two other individuals, Arroyo and Cornielle, when
they were stopped by defendant Kailer and his partner Sergeant
Albin. (Am. Compl. ¶¶ 18, 26.) At that time, Arroyo was the
driver, Wallace sat in the front passenger seat, and Shabazz and
Cornielle sat in the back. (Id. ¶ 18.) The two police officers
asked all four occupants to exit the car. (Id. ¶¶ 28-31.) When
Cornielle attempted to exit with her purse and some Chinese
food, she was ordered by Sergeant Albin to put those items back
in the car. (Id. ¶ 30.) Kailer searched the car after Cornielle
placed her purse back on the backseat. (Id. ¶ 34.) Kailer
grabbed Cornielle's purse, felt that there was a gun inside,
unlatched and opened the purse, and found a small handgun in the
purse. (Id. ¶ 35.) The plaintiffs and their companions were then
arrested and taken to the precinct. (Id. ¶ 36.)

At the precinct, the plaintiffs and their companions were interviewed by Kailer and NYPD officer James Quilty. (Id. ¶ 38.) During the interview, Cornielle allegedly told Kailer that the handgun belonged to her and that no one else in the car knew she had it. (Id. ¶ 39.) The plaintiffs further allege that they in fact had no knowledge of the gun's presence until it was found in Cornielle's purse. (Id. ¶ 40.)

The plaintiffs allege that Kailer, in furtherance of his scheme to falsely charge Shabazz, Wallace and Arroyo each with criminal possession of a weapon, manufactured photographic evidence by placing a bottle of champagne taken from the trunk and a near empty bottle of Hennessey that had not been in the car in the backseat of the vehicle on either side of the purse. (Id. ¶¶ 48-49, 68, 86.) Kailer allegedly took photographs of the bottles and the purse and provided those photographs to Assistant District Attorney Joanne Li. (Id. ¶¶ 49, 51.) Kailer allegedly drafted and provided to Li a misleading and inaccurate affidavit that omitted that Cornielle owned the purse and tried to leave the car with it, that the purse was found in the car only because Sergeant Albin told her to put it back in the car, and that Cornielle admitted that the gun was hers. (Id. ¶¶ 52-53, 55.) Kailer told Li that he noticed the car switching lanes without signaling and smelled marijuana when Arroyo rolled down his window, and that he saw the purse sitting vertically in the

4

middle of the backseat of the car, with the butt of the gun
sticking out of the top of the unlatched purse. (Id. ¶¶ 56-62.)
According to the plaintiffs, Kailer's story of why he pulled
over the car and searched it and how he found the gun was false.
(Id. ¶¶ 56-62.) Kailer was allegedly the only NYPD officer that
Li interviewed before initiating the prosecution. (Id. ¶ 63.)

Li allegedly believed Kailer and used Kailer's fabricated
photographs and story to indict the plaintiffs for criminal
possession of a weapon in the second degree. (Id. ¶ 63.) See
People v. Perrington, 932 N.Y.S.2d 472 (App. Div. 2011). Kailer
allegedly told the same false story with the same omissions when
he testified during the grand jury and trial proceedings. (Am.
Compl. ¶¶ 64-87.) During the trial, the attorneys for Shabazz
and Wallace attempted to introduce testimony that Cornielle had
admitted the gun was hers, but that admission was excluded. (Id.
¶ 90.) Allegedly there was no physical evidence introduced at
trial against Shabazz or Wallace that connected them to the gun
in any way. (Id. ¶ 89.) The jurors asked for the allegedly
fabricated photographs during deliberation, and eventually
returned a guilty verdict. (Id. ¶¶ 91-92.)

On September 16, 2009, the trial court rendered judgment
convicting the plaintiffs. See Perrington, 932 N.Y.S.2d 472. The
plaintiffs were each sentenced to a term of eight years. Id. The
plaintiffs appealed, and the Appellate Division affirmed the

convictions. See id. On October 15, 2013, the New York Court of Appeals reversed the convictions, and ordered a new trial. See People v. Shabazz, 999 N.E.2d 504, 505 (N.Y. 2013). The Court of Appeals held that it was an error for the trial court to exclude Cornielle's admission that the gun belonged to her. Id. at 505- 06. Wallace and Shabazz were released on bail in November and December, 2013, respectively, by which time they had remained in custody for almost six years. (Am. Compl. ¶¶ 42, 94, 95.) On June 30, 2014, the New York County District Attorney decided to abandon the charges against the plaintiffs. (Id. ¶ 96.)

On April 10, 2015, the plaintiffs filed this action against Kailer and the City of New York, asserting claims for violations to their constitutional rights under 42 U.S.C. § 1983 against Kailer, including malicious prosecution and the denial of a fair trial due to the fabrication of evidence. Shabazz separately asserted a state law malicious prosecution claim against Kailer, and the same claim against the City of New York for respondeat superior liability. The defendants' motion to dismiss followed.

**III.**

The defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They argue that: (a) the plaintiffs' federal and state malicious prosecution claims should be dismissed because there was probable cause for prosecuting the plaintiffs; (b) the

6

plaintiffs' fair trial claim should be dismissed because it is barred by the statute of limitations; (c) the plaintiffs' fair trial claim should be dismissed because the plaintiffs failed to show that the alleged evidentiary fabrication led to the deprivation of their liberty; and (d) Kailer is entitled to qualified immunity.

**A.**

To sustain a § 1983 claim based on malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty. See Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995); see also Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003); Jenkins v. City of New York, No. 98-CV-7170 (JGK)(DFE), 98-CV-7338 (JGK)(DFE), 1999 WL 782509, at *10 (S.D.N.Y. Sept. 30, 1999), aff'd, 216 F.3d 1072 (2d Cir. 2000).

The elements of a malicious prosecution claim under New York State law are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) (quoting Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995)); see also Manganiello v. City of New York, 612 F.3d 149,

160-61 (2d Cir. 2010). A police officer may initiate criminal proceedings by bringing charges and having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints. See Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005). "[A]n arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, or when she withholds relevant and material information." Frederique v. Cty. of Nassau, No. 11-CV-1746 (SIL), 2016 WL 1057008, at *12 (E.D.N.Y. Mar. 11, 2016) (citations and quotation marks omitted). The existence of probable cause to commence a proceeding is a complete defense to a claim of malicious prosecution. See Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003); Jenkins, 1999 WL 782509, at *11; see also Bullard v. City of New York, 240 F. Supp. 2d 292, 297 (S.D.N.Y. 2003).

The defendants contend that the indictment of the plaintiffs creates a presumption of probable cause for the prosecution. "[I]ndictment by a grand jury creates a presumption of probable cause," and that presumption may be rebutted only "by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." See Savino, 331 F.3d at 72 (citation and

quotation marks omitted). In this case, the plaintiffs were indicted, but their allegation is precisely that the indictment was procured by the evidence Kailer fabricated. (Am. Compl. ¶¶ 64-71.) That allegation suffices to overcome the presumption created by the indictment at this stage.

The defendants argue that the plaintiffs cannot rely on Kailer's testimony before the grand jury to rebut the presumption, because Kailer enjoys absolute immunity for his testimony. In Rehberg v. Paulk, 132 S. Ct. 1497, 1506 (2012), the Supreme Court held that grand jury witnesses, including law enforcement officials, enjoy absolute immunity for their grand jury testimony, even if that testimony is perjurious. In reaching that result, the Rehberg Court distinguished a modern grand jury witness from a traditional complaining witness who is not entitled to absolute immunity because that witness "set[s] the wheels of government in motion by instigating a legal action." Id. at 1507 (citations omitted); see also Sankar v. City of New York, No. 07-CV-4726 (RJD)(SMG), 2012 WL 2923236, at *3 (E.D.N.Y. July 18, 2012). The Rehberg Court explained the limitation of the holding: "we do not suggest that absolute immunity extends to all activity that a witness conducts outside of the grand jury room. For example, we have accorded only qualified immunity to law enforcement officials who falsify

9

affidavits and fabricate evidence concerning an unsolved crime."
Rehberg, 132 S. Ct. at 1507 n.1 (citations omitted).

In this case, the plaintiffs allege that Kailer signed a
false affidavit and falsified photographic evidence, which were
forwarded to the prosecution. These actions do not enjoy
absolute immunity simply because Kailer appeared before the
grand jury and discussed or repeated such allegedly fabricated
evidence to the grand jury during his testimony. See Coggins v.
Buonora, 776 F.3d 108, 112-13 (2d Cir. 2015); see also Garnett
v. Undercover Officer C0039, No. 1:13-CV-7083 (GHW), 2015 WL
1539044, at *7 (S.D.N.Y. Apr. 6, 2015), appeal docketed, No. 15-
1500 (2d Cir. May 6, 2015); Sankar, 2012 WL 2923236, at *3.
Kailer "laid the groundwork" for the indictment and his role in
the criminal proceeding is more akin to a traditional
complaining witness for whom absolute immunity is inappropriate.
See Coggins, 776 F.3d at 113-14; see also Rehberg, 132 S. Ct.
1497 at 1507; Sankar, 2012 WL 2923236, at *3.

The defendants also argue that the claim of malicious
prosecution should be dismissed because probable cause existed
separate from the allegedly fabricated evidence. In particular,
the defendants rely on New York Penal Law § 265.15, which
provides that the "presence in an automobile, other than a
stolen one or a public omnibus, of any firearm . . . is
presumptive evidence of its possession by all persons occupying

10

such automobile at the time such weapon, instrument or appliance is found." New York Penal Law § 265.15. The defendants argue that because there is no dispute that the gun was found in a vehicle that was occupied by the plaintiffs, that fact alone was sufficient to create probable cause to prosecute the plaintiffs for criminal possession of a weapon.

"Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003). In other words, it is probable cause to believe that the plaintiffs "could be successfully prosecuted." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999). This standard is slightly higher than the probable cause standard for false arrest cases. See Stansbury v. Wertman, 721 F.3d 84, 95 (2d Cir. 2013). "Where the question of whether an arresting officer had probable cause is predominantly factual in nature ... the existence ... of probable cause is to be decided by the jury." Murphy, 118 F.3d at 947; see also Bullard, 240 F. Supp. 2d at 298.

The automobile presumption is purely permissive, which "allows - but does not require - the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." Cty. Court

11

of Ulster Cty., N. Y. v. Allen, 442 U.S. 140, 157, 159-60
(1979); see also People v. Lemmons, 354 N.E.2d 836, 840 (N.Y.
1976). The presumption is "evidentiary in nature and may be
rebutted by [the] defendant's own testimony or by any other
evidence in the case, including the inherent or developed
incredibility of the prosecution's own witnesses." Mejia v. City
of New York, 119 F. Supp. 2d 232, 256 (E.D.N.Y. 2000) (citation
and quotation marks omitted) (describing the effect of the
similar presumption in New York Penal Law § 220.25 for the
presence of a controlled substance in an automobile). Certain
facts known to the police officer may be sufficient to rebut the
presumption and therefore negate the existence of probable cause
to prosecute. See id. at 256-57 (denying defendants' summary
judgment because the plaintiffs' account of events may rebut the
automobile presumption for the knowing possession of a
controlled substance and therefore negate probable cause).[1]

   When making an arrest, a police officer is not required to
investigate every piece of theoretical evidence of innocence

---

[1] The defendants cite Matthews v. City of New York, 889 F. Supp.
2d 418, 435 (E.D.N.Y. 2012), where the court found probable
cause to arrest despite allegations of the arresting officer's
knowledge of potentially exculpatory evidence. But Matthews is
distinguishable. In that case, none of the occupants of the
vehicle admitted to possessing the firearm and the totality of
the circumstances did not indicate that a reasonable officer
would exculpate the plaintiffs from common constructive
possession. See id. at 436. The allegations in this case are far
stronger that Kailer knew that that the gun was possessed solely
by Cornielle and not by the plaintiffs.

that might exist, but the officer cannot disregard exculpatory facts that were already known to him. See Jocks, 316 F.3d at 135-36. This principle similarly applies in the context of probable cause to prosecute. The application of the automobile presumption is not in itself sufficient to convict each of the automobile occupants with criminal possession of a weapon. See Allen, 442 U.S. at 167. The defendants' contention that the application of the automobile presumption provides probable cause as a matter of law despite the alleged facts that may amount to a rebuttal is, in essence, a dangerous attempt to transform a permissive presumption into a mandatory one, which would raise serious constitutional questions. See id. at 157-59. That contention is without merit.

The defendants argue that the undisputed fact that the gun was found in the car where the plaintiffs were present was sufficient for probable cause. However, the plaintiffs allege substantial exculpatory facts that were known to Kailer before he drafted the purportedly misleading affidavit. The plaintiffs allege that Cornielle had the gun in her purse and left the car with it but was told to put it back in the car. Kailer allegedly staged the placement of the purse. Cornielle allegedly told him at the stationhouse that the gun belonged to her and that no one else in the car knew she had it. At the pleading stage, taking the allegations as true and drawing inferences most favorable to

13

the plaintiffs, the Court cannot decide that there was probable cause to prosecute as a matter of law.[2] Therefore, the malicious prosecution claims under § 1983 cannot be dismissed on that basis.

### B.

The defendants contend that the plaintiffs' § 1983 fair trial claim is time-barred. In New York, the statute of limitations governing § 1983 actions is three years. See Patterson v. Cty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004). In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal" or otherwise vacated. 512 U.S. at 486-87 (footnote omitted). Therefore, "a § 1983 cause of action for damages attributable to an

---

[2] The defendants cite several cases for the proposition that absent intervening circumstances, where there is probable cause to arrest, there is also probable cause to prosecute. See, e.g., Kilburn v. Village of Saranac Lake, 413 F. App'x. 362, 363-64 (2d. Cir. 2011) (summary order). However, the plaintiffs allege that Kailer was aware of the exculpatory evidence before he instigated the prosecution by providing a false and misleading affidavit to the prosecutor. (Am. Compl. ¶ 52-54.) The plaintiffs also allege that the arrest itself was wrongful. (Id. ¶ 98.) Moreover, given the circumstances of how the gun was found at the time of the arrest, the Court cannot decide that there was probable cause to arrest. The cases cited by the defendants are therefore inapposite.

14

unconstitutional conviction or sentence does not accrue until
the conviction or sentence has been invalidated." Id. at 489-90.
Accordingly, as long as the plaintiffs' § 1983 claims challenge
the underlying convictions, the statute of limitations does not
accrue until the case against the plaintiffs is favorably
terminated. See Bailey v. City of New York, 79 F. Supp. 3d 424,
455 (E.D.N.Y. 2015).

To prevail on a § 1983 claim for denial of a fair trial
based on fabricated evidence, a plaintiff must prove that "an
(1) investigating official (2) fabricates evidence (3) that is
likely to influence a jury's decision, (4) forwards that
information to prosecutors, and (5) the plaintiff suffers a
deprivation of liberty as a result." Jovanovic v. City of New
York, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order).

In this case, the plaintiffs allege that Kailer violated
their constitutional rights by, among other things, fabricating
photographic evidence that was admitted at trial. (Am. Compl.
¶¶ 49, 86.) They allege that at the trial no physical evidence
was introduced to connect the plaintiffs to the handgun, and
that the jurors "took particular notice" of the photographs and
"asked for this specific evidence to be provided to them while
they were deliberating." (Id. ¶¶ 89, 91.) Crediting these
allegations as true and drawing the inferences most favorable to
the plaintiffs, the allegedly fabricated evidence allegedly

15

influenced the jury's decision. To prevail on their fair trial
claim, the plaintiffs necessarily will have to prove that the
referenced evidence was fabricated, and with that proven, each
conviction, influenced by the fabricated evidence, would be
called into doubt. The gist of the plaintiffs' claim is that
they were denied a fair trial and thereby convicted based on
fabricated evidence. That claim necessarily challenges each
conviction.

The defendants cite Poventud v. City of New York, 750 F.3d
121 (2d Cir. 2014) (en banc), in which the Second Circuit Court
of Appeals allowed a suit seeking damages from a conviction that
was vacated because of a Brady violation, despite a subsequent
guilty plea to a lesser offense, reasoning that the suit cannot
cast doubt on the plea because the plea was "untainted" by the
Brady violation. See 750 F.3d at 136. The defendants here argue
that the plaintiffs could have challenged the allegedly
fabricated evidence before their convictions were reversed.
However, any challenge to that evidence would necessarily have
been a collateral challenge to each conviction based on that
evidence and therefore barred by Heck.

As discussed in greater detail below, the defendants also
contend that the plaintiffs' challenge to the admission of the
allegedly fabricated evidence is not a challenge to their
convictions because the evidence was so insubstantial that it

could not have affected the plaintiffs' convictions. But that is
an issue of fact that the Court could not decide on a motion to
dismiss, especially construing the allegations in the light most
favorable to the plaintiffs. The plaintiffs allege that the
false photos were particularly powerful and that the jurors
asked for them during deliberation. (Am. Compl. ¶ 91.)

Because the plaintiffs' § 1983 fabrication of evidence
claim implicates the validity of their convictions, that claim
does not accrue until the invalidation of their convictions. See
Bailey, 79 F. Supp. 3d at 455.[3] On October 15, 2013, the New York
Court of Appeals reversed the affirmance of the plaintiffs'
convictions and ordered a new trial, and the State abandoned the
charges on June 30, 2014. The plaintiffs' action, filed on

---

[3] The defendants cite Veal v. Geraci, 23 F.3d 722, 724 (2d Cir.
1994), a pre-Heck case where the Court of Appeals for the Second
Circuit held that a claim based on an unconstitutional lineup
identification accrues when the plaintiff knows or has reason to
know of the allegedly wrongful conduct and the resulting harm –
in that case, no later than the date of the conviction and
imprisonment. The plaintiffs argue that Veal was overruled by
Heck. The defendants respond that they only cited Veal for the
unremarkable proposition that "knowledge of the injury" is not
synonymous with "judicial verification that the defendants' acts
were wrongful." (See Def.s' Reply at 4.) It is plain that Veal
had no opportunity to consider Heck and its progeny and that
Heck makes it clear that when a § 1983 claim challenges the
validity of a conviction, as the fair trial claim does in this
case, the claim accrues only when the conviction is reversed or
otherwise vacated.
    The defendants also cite Mitchell v. Home, 377 F. Supp. 2d
361, 373 (S.D.N.Y. 2005), but that case did not consider Heck or
the effect of Heck on the statute of limitations for a § 1983
claim.

November 12, 2015, is within the three year statute of
limitations.

### C.

The defendants contend that the plaintiffs' fair trial
claim should be dismissed because the plaintiffs have failed to
show that the alleged evidentiary fabrication led to the
deprivation of the plaintiffs' liberty.

"When a police officer creates false information likely to
influence a jury's decision and forwards that information to
prosecutors, he violates the accused's constitutional right to a
fair trial, and the harm occasioned by such an unconscionable
action is redressable in an action for damages under 42 U.S.C. §
1983." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d
Cir. 1997); see also Zahrey v. Coffey, 221 F.3d 342, 349 (2d
Cir. 2000).

The defendants argue that the alleged fabrication of
evidence was not sufficiently material, or likely to have
influenced the jury's decision. They argue that the photographic
evidence showing empty bottles of liquor, even if fabricated,
bears no relation to any elements of the offence charged, namely
criminal possession of a weapon. However, the jury is alleged to
have taken "particular notice" and "asked for this [allegedly
fabricated] evidence to be provided to them while they were
deliberating." (Am. Compl. ¶ 91.) The implication is that the

18

jury was influenced by the photos that allegedly showed where the purse with the weapon was found, even though Officer Kailer knew that the photograph was simply a staged representation and that Corneille had actually left the car with the purse and was told to put it back in the car. These allegations sufficiently give rise to a reasonable inference that the jury was in fact influenced by the allegedly fabricated evidence, which is more than enough for the materiality element. See, e.g., Peacock v. City of Rochester, No. 6:13-CV-6046 (MAT), 2016 WL 2347448, at *6 (W.D.N.Y. May 4, 2016); Grega v. Pettengill, 123 F. Supp. 3d 517, 539 (D. Vt. 2015).

The defendants' reliance on Carr v. City of New York, No. 11-CV-6982 (SAS), 2013 WL 1732343 (S.D.N.Y. Apr. 19, 2013), is misplaced. In that case, the court found that evidence only relevant to the acquitted charges was unlikely to have influenced the jury's decision to convict the plaintiff for the remaining charges. See id. at *7. In this case, the plaintiffs were convicted for the offenses they were charged with and the evidence was relevant to those charges and considered during the jury's deliberation.

The defendants also argue that the plaintiffs cannot prove causation between Kailer's alleged misconduct and the deprivation of the plaintiffs' liberty, because the independent

19

acts by the prosecutor, the trial court, or the plaintiffs themselves have broken the chain of causation.

"A § 1983 action, like its state tort analogs, employs the principle of proximate causation." Townes v. City of New York, 176 F.3d 138, 146 (2d Cir. 1999). Therefore, § 1983 "makes a man responsible for the natural consequences of his actions." Wray v. City of New York, 490 F.3d 189, 193 (2d Cir. 2007) (citations and quotation marks omitted). Causation is generally a question of fact that should be decided by a jury. See Peacock, 2016 WL 2347448, at *8 (citing Redd v. New York Div'n of Parole, 678 F.3d 166, 178 (2d Cir. 2012)).

The defendants argue that because the prosecutors had independent probable cause to prosecute, it was the prosecution rather than the alleged misconduct by Kailer that caused the plaintiffs' convictions and imprisonment. However, as explained above, the Court could not decide that there was probable cause to prosecute the plaintiffs independent of the alleged information provided by Kailer. Moreover, the plaintiffs allege that Kailer caused the prosecution by manufacturing evidence against the plaintiffs. (Am. Compl. ¶ 63.) Where a police officer deceives subsequent decision makers with false information, the chain of causation need not be considered broken because the officer can reasonably foresee that his misconduct will contribute to the subsequent decisions that

20

result in a deprivation of liberty. See Townes, 176 F.3d at 147;
see also Higazy v. Templeton, 505 F.3d 161, 177 (2d Cir. 2007);
Zahrey, 221 F.3d at 351-52. Kailer therefore cannot avoid
liability by pointing a finger at the prosecutor that he
allegedly deceived and misled.

The defendants cite Hoyos v. City of New York, for the
proposition that when deprivation of liberty stems from a
prosecution, "where independent probable cause exists for the
prosecution, plaintiff must show that the misconduct caused some
deprivation above and beyond the fact of the prosecution
itself." 999 F. Supp. 2d 375, 394 (E.D.N.Y. 2013). That case is
distinguishable because it was decided on a motion for summary
judgment, where the court found probable cause for the
prosecution. Id.[4] Moreover, the Court of Appeals for the Second
Circuit, ruling on the appeal of the denial of a motion to
reconsider the opinion granting summary judgment, observed that
"the district court's statement that independent probable cause
rules out the possibility that fabricated evidence proximately

---

[4] Several other cases cited by the defendants for the same
proposition are similarly distinguishable on procedural and
factual grounds. See, e.g., Blau v. Suffolk Cty., No. 11-CV-4818
(JMA)(SIL), 2016 WL 426515, at *1, *4 (E.D.N.Y. Feb. 3, 2016)
(summary judgment; independent probable cause found); Briukhan
v. City of New York, No. 12-CV-6014 (ILG)(RML), 2015 WL 7717191,
at *1, *4 (E.D.N.Y. Oct. 19, 2015) (same); Barnes v. City of New
York, No. 13-CV-7283 (GBD)(JLC), 2015 WL 4076007, at *18
(S.D.N.Y. July 2, 2015) (report and recommendation) (summary
judgment; no evidence of fabrication).

caused the deprivations stemming from his prosecution is not, as a general matter, correct." Hoyos v. City of New York, No. 14-3853-CV, 2016 WL 3092115, at *2 (2d Cir. June 2, 2016) (summary order) (per curiam). The Court of Appeals affirmed only because on clear error review, it was unclear that "a reasonable jury could find that prosecutors would not have proceeded against [the plaintiff] as they did, absent the allegedly fabricated evidence." Id. In this case, construing the allegations in the light most favorable to the plaintiffs, the Court could not conclude that the allegedly fabricated evidence did not cause the prosecutor to initiate the prosecution against the plaintiffs when she otherwise would not have proceeded with the prosecution.

The defendants also contend that the deprivation of the plaintiffs' liberty is attributable either to the trial court's refusal to admit testimony regarding Cornielle's alleged admission of ownership of the gun, or to the plaintiffs' failure otherwise to introduce into evidence that alleged admission, or both. They contend that all parties were aware of the alleged admission, and therefore Kailer's omission of that admission in his reports had no effect.

All of these speculative scenarios cannot erase the plaintiffs' claims against Kailer because the plaintiffs have sufficiently and plausibly alleged that Kailer's improper

22

actions in creating false testimony and evidence caused the prosecution against them. Kailer allegedly committed a constitutional violation when he forwarded the allegedly false information to the prosecutor. See Ricciuti, 124 F.3d at 130. While the "manufacture of false evidence, 'in and of itself' . . . does not impair anyone's constitutional right," the forwarding of the false evidence to a prosecutor may nevertheless "precipitate the sequence of events that resulted in a deprivation of [a plaintiff's] liberty" and therefore constitute a constitutional violation. See Zahrey, 221 F.3d at 348. The prosecutor may have relied upon the false report with the material omission, but for which she may have made different decisions favorable to the plaintiffs, including the decision not to prosecute. See Bermudez v. City of New York, 790 F.3d 368, 375-376 (2d Cir. 2015); see also Garnett, 2015 WL 1539044, at *6 (listing decisions that a prosecutor could have made but for the falsified evidence). Kailer's forwarding of false information, thereby initiating the prosecution, may remain a proximate cause for the plaintiffs' convictions and deprivation of liberty, if he could "reasonably foresee that his misconduct [would] contribute to an 'independent' decision that result[ed] in a deprivation of liberty." Zahrey, 221 F.3d at 352; see also Bermudez, 790 F.3d at 376; Higazy, 505 F.3d at 177. The Court cannot decide on a motion to dismiss that the acts by the trial

judge or the plaintiffs themselves were superseding causes for the plaintiffs' convictions and imprisonment. See Higazy, 505 F.3d at 177. That factual question cannot be resolved against the plaintiffs on a motion to dismiss.

The defendants argue that Kailer's allegedly false testimony regarding how he found the gun and the circumstances justifying the traffic stop cannot form the basis of the plaintiffs' claim, because "the only avenue by which the testimony could reach the jury was through [the officer's] testimony, for which he enjoys absolute immunity." Jovanovic, 486 F. App'x at 152 (citations omitted) (summary order). The defendants cite this part of Jovanovic out of context and appear to have conflated the elements of causation and materiality. While the false information must be "likely to influence a jury" so that it is material, there is no requirement for the false information to reach a jury so that it is a legally cognizable cause for the deprivation of the plaintiffs' liberty. Garnett, 2015 WL 1539044, at *8-*9. A police officer who initiates a prosecution through false testimony or fabricated evidence forwarded to the prosecutor cannot claim that the chain of causation is broken simply because he is protected by immunity for his trial or grand jury testimony in which he repeats the same false information. See Coggins, 776 F.3d at 113; Zahrey, 221 F.3d at 342, 357 (prosecutor's fabrication of evidence may

24

remain the legally cognizable cause for deprivation of the
plaintiff's liberty despite his own use of the fabricated
evidence in prosecution); White v. Frank, 855 F.2d 956, 961 (2d
Cir. 1988) ("[T]hat [a police officer's] testimony at a judicial
proceeding may have been the means by which he initiated the
prosecution does not permit him to transpose the immunity
available for defamation as a defense to malicious
prosecution."). A police officer's submission of false
information to a prosecutor may in itself serve as a proximate
cause of the deprivation of a criminal defendant's right to a
fair trial and deprivation of liberty. See Bermudez, 790 F.3d at
376; Peacock, 2016 WL 2347448, at *8.

The plaintiffs here allege that Kailer's false testimony as
contained in his affidavit caused the prosecutor to initiate the
case against the plaintiffs, and could have affected the result
of the trial through his influence on the prosecutor alone. (Am.
Compl. ¶¶ 52, 55, 63.) Whether Kailer's fabrication of evidence
had such a significant impact on the prosecutorial decision is a
question of fact that cannot be decided on a motion to dismiss.
To the extent the § 1983 fair trial claim against Kailer is not
based on his grand jury or trial testimony, but on his
forwarding of the false information to the prosecutor, the
forwarding of false information can form the basis for that
claim. See Ricciuti, 124 F.3d at 130; see also Jocks, 316 F.3d

at 138; Garnett, 2015 WL 1539044, at *8-*9. Jovanovic is distinguishable because in that case there is no indication that the allegedly false information created by the police officer caused the prosecution. See Jovanovic v. City of New York, No. 04-CV-8437 (PAC), 2010 WL 8500283, at *11 (S.D.N.Y. Sept. 28, 2010), aff'd, 486 F. App'x 149 (2d Cir. 2012).

In any event, the defendants' arguments fail to address the allegedly fabricated photographic evidence, which lawfully reached the jury and was allegedly a significant factor in the jury's decision. Construing the evidence in the light most favorable to the plaintiffs, Kailer's alleged fabrication of this evidence and forwarding of this evidence to the prosecutor caused the deprivation of the plaintiffs' liberty. The plaintiffs' allegations in this regard suffice to state a § 1983 fair trial claim.

### D.

The Court cannot decide at the pleading stage that qualified immunity applies. "As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir. 1994). The alleged unlawful conduct by Kailer is the creation of a false affidavit and the fabrication of evidence.

"[I]t is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." <u>Zahrey</u>, 221 F.3d at 355. With the plaintiffs' allegations credited as true, Kailer's conduct "violates an accused's clearly established constitutional rights, and no reasonably competent police officer could believe otherwise." <u>Ricciuti</u>, 124 F.3d at 130. Therefore, the Court cannot decide that Kailer is entitled to qualified immunity.

**CONCLUSION**

To the extent not specifically addressed above, any remaining arguments are either moot or without merit. The defendants' motion to dismiss is denied. The Clerk is directed to close Docket No. 22.


**SO ORDERED.**


**Dated:**      **New York, New York**
                **August 12, 2016**                  _____/s/_____
                                                    **John G. Koeltl**
                                        **United States District Judge**

27